# United States Court of Appeals for the Federal Circuit

2007-5121

AMERISOURCE CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Ronald J. Mann, Mitts Milavec, LLC, of Philadelphia, Pennsylvania, argued for plaintiff-appellant. With him on the brief was Maurice R. Mitts.

Robert E. Chandler, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Jeanne E. Davidson, Director, and Deborah A. Bynum, Assistant Director.

Appealed from: United States Court of Federal Claims

Judge Lawrence M. Baskir

# United States Court of Appeals for the Federal Circuit

2007-5121

AMERISOURCE CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 04-CV-610, Judge Lawrence M. Baskir.

_____

DECIDED: May 1, 2008

_____

Before MAYER and SCHALL, <u>Circuit Judges</u>, and YOUNG, <u>District Judge</u>.[*]

YOUNG, <u>District Judge</u>.

This case requires us to determine whether the Fifth Amendment's Takings Clause applies when the government seizes an innocent third party's property for use in a criminal prosecution but never introduces the property in evidence, and it is rendered worthless over the course of the proceedings. We affirm the Court of Federal Claims'

---

[*] Honorable William G. Young, District Judge, United States District Court for the District of Massachusetts, sitting by designation.

grant of summary judgment for the government on the ground that no compensable taking has occurred.

## I.  BACKGROUND

In early August 2000, AmeriSource Corporation ("AmeriSource"), a wholesale pharmaceutical distributor, contracted with Norfolk Pharmacy ("Norfolk") to sell it a large quantity of Viagra, Propecia, and Xenacil for $150,826.26.  <u>AmeriSource Corp. v. United States</u>, 75 Fed. Cl. 743, 744 (2007).  Although AmeriSource delivered the drugs to Norfolk's headquarters in Weirton, West Virginia, AmeriSource retained ownership at all times because Norfolk never finalized payment.  <u>See</u> Aplt's App., at A25, A31-A34.

A few days before Norfolk entered into the agreement with AmeriSource, the United States Attorney for the Middle District of Alabama indicted the pharmacy's principals, Anton Pusztai and Anita Yates, on charges of "conspiracy, unlawful distribution of prescription pharmaceuticals, operating an unregistered drug facility, and conspiracy to commit money laundering."  <u>AmeriSource</u>, 75 Fed. Cl. at 744.  The United States Attorney seized a large number of pharmaceuticals from Norfolk's warehouse in connection with this investigation, including those that AmeriSource had recently delivered.  <u>Id.</u>  AmeriSource does not contest the legality of this seizure.

After the government rebuffed AmeriSource's initial requests for return of the drugs, AmeriSource filed a petition pursuant to Rule 41(e)[1] of the Federal Rules of Criminal Procedure, which provides a remedy for owners whose property has been seized as part of a criminal proceeding.  <u>Id.</u>  The district court denied AmeriSource's

---

[1] The rule is now numbered Federal Rule of Criminal Procedure 41(g).  The substance of the rule has not changed.

request, and the government retained the drugs through a trial that resulted in Pusztai and Yates's convictions. Id. at 745. After the Eleventh Circuit overturned the convictions, the government retained the drugs until Pusztai and Yates pleaded guilty. Id. By that point, the drugs had passed their expiration date and become worthless. Id. Contrary to the government's representations, they were never introduced in evidence in any proceeding. Id.

## A. PROCEEDINGS BELOW

AmeriSource sought to recover the drugs or their equivalent value in three different proceedings. First, in October 2000, AmeriSource filed the aforementioned Rule 41(e) petition, which the District Court for the Middle District of Alabama denied. AmeriSource, 75 Fed. Cl. at 744-45. In August 2002, AmeriSource filed a claim against Norfolk in the United States District Court for the District of West Virginia, and the court entered a default judgment against Norfolk in the amount of $208,070.12. AmeriSource, 75 Fed. Cl. at 746. That judgment remains unsatisfied. Id. Finally, AmeriSource filed the instant action in the Court of Federal Claims in 2004 seeking to recover the value of the seized drugs based upon the alleged Fifth Amendment taking. Id. at 744. The proceedings in the Middle District of Alabama and the Court of Federal Claims are outlined below.

On October 2, 2000, AmeriSource petitioned the District Court for the Middle District of Alabama to order a return of the seized drugs. Id. The court treated the request as a petition under Federal Rule of Criminal Procedure 41(e), which provides in full:

A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.[2]

AmeriSource argued for the return of its property on the ground that the "use by" date on the drugs would soon pass. Id. at 744. In addition, AmeriSource maintained that the government would suffer no hardship were it allowed to retain a sample of the confiscated drugs. Id. Assuring the court that it would give back the drugs before their expiration date, the government insisted that even a partial return was not possible because its "trial strategy was to present all of the property in question at trial, in order to establish the illicit nature of the criminal defendants' sales activity." Id. at 745. In addition, the government maintained that AmeriSource had failed to avail itself of alternative civil remedies against Norfolk. Id.

In a report and recommendation ultimately adopted by the district court without challenge, a magistrate judge rejected AmeriSource's petition because AmeriSource could not identify with any reasonable degree of specificity the drugs it owned. Id. at 748. Apparently, the seized pharmaceuticals included drugs from a number of distributors, and they had all become commingled. See id. In addition, "[t]he magistrate found that AmeriSource had not demonstrated that it lacked an adequate remedy at law." Id.

---

[2] At oral argument, neither side offered an explanation for why AmeriSource did not bring the Rule 41(e) petition in the district court in West Virginia, the jurisdiction where the drugs were seized.

In the proceeding that we have jurisdiction to review, the Court of Federal Claims granted summary judgment for the government. Id. at 752. The court ruled that the government had seized and retained the property pursuant to the police power, and, therefore, the Takings Clause did not apply.[3] Id. at 751. The Court of Federal Claims reasoned that "[t]he ability of federal prosecutors to deprive property owners of certain items in order to secure justice and a fair trial for a criminal defendant is a legitimate and traditionally accepted exercise of the police power. Accordingly, it is by definition not a compensable taking." Id. The court emphasized that although the police power is expansive, the government still must exercise it in a reasonable manner. The court concluded, however, that "[a] judicial endorsement of the Government's retention of property as evidence demonstrate[d] that there has been a reasonable exercise of the Government's police power." Id. at 749.

We agree.

## II. ANALYSIS

This court reviews de novo the decisions of the Court of Federal Claims to grant summary judgment. Jentoft v. United States, 450 F.3d 1342, 1346 (Fed. Cir. 2006). We have jurisdiction to review the judgment of the Court of Federal Claims under 28 U.S.C. §§ 1295(a)(3) and 1491(a)(1), but we note that neither our Court nor the Court of Federal Claims has jurisdiction to review a district court's denial of relief under Rule 41(e). See Garcia Carranza v. United States, 67 Fed. Cl. 106, 112 (2005) ("[T]he

---

[3] Although the motions were originally filed as motions to dismiss, the Court of Federal Claims determined that the parties had submitted sufficient evidence in the form of affidavits to convert them into motions for summary judgment. Aplt's App. at 6. Neither party challenges this conversion.

United States Court of Federal Claims does not have jurisdiction to review final judgments of the United States District Court[s] . . . including [under] Fed. R. Crim. P. 41(g) . . . .").

### A. THE GOVERNMENT'S DECISION TO RETAIN AMERISOURCE'S DRUGS BEYOND THE POINT OF EXPIRATION DOES NOT CONSTITUTE A TAKING

The Takings Clause provides in full: "nor shall private property be taken for public use without just compensation." U.S. Const. Amend. V. The clause does not entitle all aggrieved owners to recompense, only those whose property has been "taken for a public use." At first blush, the language appears to entitle vast numbers of citizens to seek relief via the Takings Clause. After all, in a "government of the people, by the people, and for the people," Abraham Lincoln, The Gettysburg Address (November 19, 1863), every government action is intended to benefit the public.

AmeriSource relies on this expansive reading of public use. Its argument that it is due "just compensation" is premised on the assumption that "public use" encompasses any government use of private property aimed at promoting the common good, including enforcement of the criminal laws. If we confined our reasoning to a literal reading of the text, AmeriSource's argument might have considerable force. The text does not qualify the term, nor does it specify particular types of public use that trigger the just compensation requirement. In the context of the Takings Clause, however, "public use" has a narrower meaning because courts have construed it in harmony with the police power.

### 1. The government's seizure of property to enforce criminal laws is a traditional exercise of the police power that does not constitute a "public use"

"[T]he police powers of a state . . . are nothing more or less than the powers of government inherent in every sovereignty to the extent of its dominions[.]" The License Cases, 46 U.S. 504, 584 (1847) (some internal alterations omitted). An axiomatic but amorphous aspect of sovereignty, "[t]he police power was always a flexible notion – so flexible, indeed, that some have quipped that the concept has little to commend it beyond alliteration." 1 Laurence H. Tribe, American Constitutional Law § 6-4 (3d. ed. 2000). Although the precise contours of the principle are difficult to discern, it is clear that the police power encompasses the government's ability to seize and retain property to be used as evidence in a criminal prosecution. See Warden v. Hayden, 387 U.S. 294, 309-10 (1967). [4]

Property seized and retained pursuant to the police power is not taken for a "public use" in the context of the Takings Clause. In Acadia Technology, Inc. v. United States, 458 F.3d 1327, 1329 (Fed. Cir. 2006), United States Customs seized three shipments of cooling fans for computer processors bearing fabricated trademark stickers in violation of section 42 of the Lanham Act, 15 U.S.C. § 1124. The government seized the fans pursuant to section 526(e) of the Tariff Act of 1930, 19 U.S.C. § 1526(e), which "provides that any merchandise bearing a counterfeit mark . . . that is imported into the United States in violation of [the Lanham Act] 'shall be seized and, in the absence of the written consent of the trademark owner, forfeited for violations of the customs laws.'" Acadia, 458 F.3d at 1329 (quoting 19 U.S.C. § 1526(e)). The government failed to initiate forfeiture proceedings for four years and ultimately agreed to dismiss the forfeiture action, but did not return the fans until their

_____

[4] The government's broad power to seize and retain physical evidence is not merely for the convenience of the government. The rule of law requires that the case against a defendant may not be based upon rumor, speculation, or assertions made by the sovereign's representatives, but upon the testimony of witnesses and physical evidence. This system cannot function if property holders are free to withhold property that might form a part of the government's case.

only value was as scrap. Id. Acadia brought a takings claim.

This court affirmed the dismissal by the Court of Federal Claims, holding that "[t]he government's seizure, retention, and damaging of the property did not give rise to an actionable claim for a taking . . . because 'items properly seized by the government under its police power are not seized for 'public use' within the meaning of the Fifth Amendment.'" Id. at 1332 (quoting Seay v. United States, 61 Fed. Cl. 32, 35 (2004)). We reasoned that "[a] Customs seizure of goods suspected of bearing counterfeit marks is a classic example of the government's exercise of the police power to condemn contraband or noxious goods, an exercise that has not been regarded as a taking for public use for which compensation must be paid." Id. In the instant case, the government seized the pharmaceuticals in order to enforce criminal laws, a government action clearly within the bounds of the police power. Acadia therefore dictates that the property here was "not seized for 'public use' within the meaning of the Fifth Amendment." Id.

As the Supreme Court explained in Bennis v. Michigan, 516 U.S. 442 (1996), a case involving governmental seizure of property for law enforcement purposes, the inquiry remains focused on the character of the government action, not the culpability or innocence of the property holder. In Bennis, Mr. Bennis was convicted of engaging in sexual activity with a prostitute in an automobile, and a Michigan court ordered the car forfeited pursuant to a state law that permitted forfeiture of property that constituted a public nuisance. Id. at 443-44. Mrs. Bennis alleged that the forfeiture constituted a taking because she owned a half-interest in the car and had no knowledge of her

husband's illegal act. Id. at 444. After determining that depriving Mrs. Bennis of her half-interest did not violate due process, id. at 446, the Court quickly disposed of Mrs. Bennis's takings argument on the ground that "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain," id. at 452. Because the state had acted in an effort to "deter illegal activity that contributes to neighborhood deterioration and unsafe streets," it could divest Mrs. Bennis, an innocent owner, of her property interest without compensation. Id. at 453.

Bennis suggests that so long as the government's exercise of authority was pursuant to some power other than eminent domain, then the plaintiff has failed to state a claim for compensation under the Fifth Amendment. Id. The innocence of the property owner does not factor into the determination. Id.; see also United States v. One 1979 Cadillac Coupe De Ville, 833 F.2d 994, 1000 (Fed. Cir. 1987) (noting that an acquittal "did not make the government seizure and possession [of property related to the crime with which the defendant was charged but ultimately acquitted] any less proper, or convert that seizure into a taking"); Seay, 61 Fed. Cl. at 33-35 (holding that the subject of a criminal investigation did not state a takings claim even though a ruptured pipe at a government storage facility had rendered his property nearly worthless, and despite the fact that he was never indicted).

As unfair as it may seem, under Acadia and Bennis, the government's decision to retain the drugs until they expired – even though they were never introduced in the case-in-chief against Pusztai and Yates – did not result in a compensable taking. Once

the government has lawfully seized property to be used as evidence in a criminal prosecution, it has wide latitude to retain it so long as the investigation continues, regardless of the effect on that property. In Seay, for example, the government held Mr. Seay's property for six years before returning it in a nearly worthless condition. 61 Fed. Cl. at 33. This troubling use of authority was compounded by the fact that the six-year investigation did not even yield an indictment. Id. The Court of Federal Claims, however, reasoned that this seeming injustice was of little moment because the government acted under the authority of the police power. Id. at 35.

As expansive as the police power may be, it is not without limit. The limits, however, are largely imposed by the Due Process Clause. "Where public officials 'unlawfully seize or hold a citizen's realty or chattels, recoverable by appropriate action at law or in equity,' the true owner may 'bring his possessory action to reclaim that which is wrongfully withheld.'" Hayden, 387 U.S. at 308. The process described in Rule 41(g), formerly Rule 41(e), affords the district court wide latitude to conduct hearings and balance the equities in order to determine whether the government or a property owner ought retain possession of the property during the course of a criminal proceeding. Fed. R. Crim. P. 41(g). Thus, Rule 41(g) is important not only because it ensures that the government is acting pursuant to the police power, but also because it guards against abuse of the police power.

In the instant case, AmeriSource did not contest the government's position that the drugs were connected to the crime or that it was necessary for the government to introduce at least some of the drugs into evidence. See Amerisource, 75 Fed. Cl. at

745. The magistrate judge's unchallenged determination that the government should keep the drugs, id., satisfies us that there was at least some nexus between AmeriSource's pharmaceuticals and the prosecution.

AmeriSource has taken great pains to distinguish Acadia and Bennis on the ground that the drugs in this case are not contraband. That argument is beside the point. So long as there is a tenable connection, the precise relationship of the drugs to the crime is not relevant; rather, the character of the government action is the sole determining factor. The undisputed record in this case, which includes the Rule 41(e) proceeding, reveals that the United States Attorney seized the drugs pursuant to the police power.

**2. None of the cases AmeriSource cites suggests that the takingsinquiry hinges on the innocence of the property owner**

Notwithstanding Bennis and Acadia, AmeriSource maintains that even when the government acts pursuant to the police power a taking can occur if the aggrieved property owner is an innocent third party. Despite the considerable appeal of this position as a matter of policy, AmeriSource has failed to prove that such a taking could occur in theory, much less that such a taking occurred in this case. AmeriSource does not cite a single case where seizure of property to be used as evidence has resulted in a compensable taking under the Fifth Amendment. The cases AmeriSource proffers, Soverio v. United States, 967 F.2d 791, 793-94 (2d Cir. 1992), Mora v. United States, 955 F.2d 156, 158-61 (2d Cir. 1992), United States v. Hall, 269 F.3d 940, 941-45 (8th Cir. 2001), United States v. Martinson, 809 F.2d 1364, 1368-69 (9th Cir. 1987), and Lowther v. United States, 480 F.2d 1031, 1033 (10th Cir. 1973), simply do not support

its position.

Soverio, Mora, and Martinson do not even mention the Takings Clause. In Soverio, for example, the Second Circuit held that the government's destruction of certain property belonging to a convicted felon did not moot the felon's Rule 41 petition. 967 F.2d at 793-94. Thus, Soverio highlights the unremarkable principle that even convicted felons have some property rights. If anything, however, the case undermines AmeriSource's argument because the Second Circuit did not even refer to the Fifth Amendment or the Takings Clause, and the court assumed that motions for return of destroyed evidence are properly brought under the Federal Rules of Criminal Procedure.

The remaining precedents are non-binding and unpersuasive. In Lowther, a Tenth Circuit case from 1973, the Bureau of Alcohol Tobacco and Firearms ("A.T.F.") destroyed a citizen's guns despite the fact that he had recently been acquitted of all charges. 480 F.2d at 1032-33. The Tenth Circuit concluded that the case "boil[ed] down [ ] to the government's having destroyed appellee's property without having any authority in law to do it. Consequently, the action of the Director of the [A.T.F.] Division constituted a disregard of the evidence and law in the case and was contrary to the due process clause of the Fifth Amendment." Id. at 1033-34. Lowther simply does not apply to the case at bar. While the government's decision to destroy the guns despite Mr. Lowther's acquittal was clearly in violation of due process, in this case, by contrast, AmeriSource has not contested the legitimacy of the government's decision to seize or retain the property. Instead, it merely requested compensation, which is plainly not due

under the Fifth Amendment.

In addition, AmeriSource seizes on ambiguous language from inapplicable caselaw. For example, AmeriSource cites Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663 (1974), where the Supreme Court upheld against takings and due process challenges a Puerto Rican statute providing for the seizure and forfeiture of property used in furtherance of crimes, even where the property belonged to an innocent owner, id. at 680. Near the end of the opinion, the Court mused:

> [I]t would be difficult to reject the constitutional claim of an owner . . . who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive.

Id. at 689-90 (footnote and internal citations omitted).

This dicta has no bearing on the case at bar. See Bennis, 516 U.S. at 450 (declining to follow this very passage on the grounds that it was "obitur dictum"). To begin, it references innocent owners who did not "voluntarily entrust[]" their property to criminals. Id. at 690. Here, there is a strong argument that AmeriSource did not "do all that could be expected" to prevent the deprivation of its property because it sold the drugs to Norfolk a few days after the company's principals had been indicted. AmeriSource, 75 Fed. Cl. at 744. Moreover, it is not clear whether the Court meant to suggest that such a deprivation would implicate the Due Process or the Takings Clause. Most importantly, the dicta is phrased as a hypothetical; the Court has yet to find such a plaintiff, and Bennis, decided two decades later, indicates that it is unlikely to do so. See Bennis, 516 U.S. at 450.

2007-5121                                    13

AmeriSource's final refuge is <u>Shelden v. United States</u>, 7 F.3d 1022 (Fed. Cir. 1993). In <u>Shelden</u>, this court concluded that an innocent mortgage holder stated a takings claim after the government foreclosed on the property following the mortgagor's conviction for violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962. 7 F.3d at 1029-30. AmeriSource contends that "<u>Shelden</u> was a case, like this one, involving a takings claim by an innocent party whose property was taken solely because of a criminal conviction of an unrelated third party." Aplt's Br. at 14. AmeriSource's reliance on <u>Shelden</u> is misplaced. To begin, <u>Shelden</u> was decided before <u>Bennis</u>. To the extent that it purports to create any rules with respect to innocent owners in the takings context, it has plainly lacks force. Moreover, the <u>Acadia</u> court explained in a footnote that "<u>Shelden</u> was limited to an <u>in personam</u> criminal forfeiture following the criminal conviction of a third party, in which an innocent owner-claimant sought to recover his interest in the forfeited property." <u>Acadia</u>, 458 F.3d at 1333 n.1. Here, the government did not exercise control over the pharmaceuticals vis-á-vis a <u>in personam</u> criminal forfeiture; rather, it seized the drugs as part of a criminal prosecution.

### III. CONCLUSION

It is unfair that any one citizen or small group of citizens should have to bear alone the burden of the administration of a justice system that benefits us all. But the war memorials only a short distance from the Federal Circuit courthouse remind us that individuals have from time to time paid a dearer price for liberties we all enjoy. While AmeriSource's core theory is a sensible policy argument, it is just that, a policy argument that has been considered and discarded in the relevant precedents.

2007-5121                                        14

Someday Congress may well pass a law providing compensation for owners in AmeriSource's position. In the meantime, this case stands as a "reminder that the Federal Constitution does not prohibit everything that is intensely undesirable." <u>Bennis</u>, 516 U.S. at 454 (Thomas, J., concurring).

The judgment of the Court of Federal Claims is therefore AFFIRMED.


<u>AFFIRMED</u>