2012 COA 219

**RAPTOR EDUCATION FOUNDATION, INC., Plaintiff–Appellant,**

v.

**STATE of Colorado, DEPARTMENT OF REVENUE, DIVISION OF MOTOR VEHICLES, Defendant–Appellee.**

No. 11CA2446.

Colorado Court of Appeals, Div. II.

Dec. 27, 2012.

Fairfield & Woods, P.C., John M. Tanner, Stefania C. Scott, Denver, Colorado, for Plaintiff–Appellant.

John W. Suthers, Attorney General, Todd S. Larson, First Assistant Attorney General, Patrick L. Sayas, Senior Assistant Attorney General, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge BOORAS.

¶ 1 Plaintiff, Raptor Education Foundation, Inc. (REF), appeals the trial court's summary judgment in favor of defendant, State of Colorado, Department of Revenue, Division of Motor Vehicles (the Department). REF also challenges the denial of its C.R.C.P. 59(d)(6) motion for a new trial. We reverse and remand for further proceedings.

## I. Background

¶ 2 This is the parties' second appeal, arising from a series of developments following the opinion in the first appeal, *Raptor Education Foundation, Inc. v. State*, Colo.App. No. 02CA0162, 2003 WL 21284468 (June 5, 2003) (not published pursuant to C.A.R. 35(f)) (*REF I* ). We rely on the statement of facts in *REF I* to provide the necessary background for this case.

¶ 3 Between December 1999 and February 2000, the parties executed a "letter of agreement" regarding the provision of specialty license plates. The agreement provided, among other things, that the Department would sell the specialty license plates only to members of REF. Several months after the execution of this agreement, the Department informed REF that its request had been "approved," but that it would not restrict its sales to members of REF. Despite REF's objections, when the plates became available to the public, the Department did not require that the purchasers belong to REF.

¶ 4 REF filed a lawsuit alleging breach of contract and violation of equal protection resulting from the Department's sale of the plates to unqualified purchasers. After a bench trial, the court found that the "letter of agreement" did not constitute a valid contract. However, the court found that the failure to restrict sales to only REF members was a violation of equal protection and ordered the Department to sell only to REF members in the future (the 2002 order).

¶ 5 Both parties appealed from the judgment. *REF I*. In the interim, however, the General Assembly had passed legislation that required the Department to restrict sales of the specialty plates to only REF members. *See* Ch. 336, sec. 1, § 42–3–117.5(1)(b), 2002 Sess. Laws 1802; Ch. 337, sec. 3, § 42–3–117.5(1)(b), 2002 Sess. Laws 1804 (now codified as amended at § 42–3–208, C.R.S.2012).[1] On the Department's motion, a division of this court dismissed the Department's appeal. *See REF I*. Accordingly, the only issue remaining for the division's review was the trial court's judgment in favor of the Department on REF's breach of contract claim.

¶ 6 The division concluded that a contract existed between REF and the Department and the trial court clearly erred in holding otherwise. *REF I*. The division further concluded that, because the Department admitted that it did not restrict its sales of the specialty plates to REF members as provided by the agreement, the Department breached the contract. *REF I*. The division remanded the case to the trial court for a hearing to assess damages. *REF I*. The parties ultimately settled without the necessity of a hearing.

¶ 7 For several years, the Department complied with its obligation under the contract and the court's 2002 order, selling specialty plates only to REF members. In 2009, however, the General Assembly amended section 42–3–208 as follows (the 2009 amendment):

---

1. That legislation provided:

The department or an authorized agent shall not issue a raptor education foundation special license plate to an applicant until such applicant has provided to the department or an authorized agent sufficient evidence to demonstrate that the applicant is a member in good standing of the raptor education foundation and qualified by such foundation to receive a special license plate.

The department or an authorized agent shall not issue a raptor education special license plate to an applicant until such applicant has provided to the department or an authorized agent sufficient evidence to demonstrate that the applicant is a member in good standing of the raptor education foundation and qualified by such foundation to receive a special license plate *or the applicant is a member of the rocky mountain raptor program [RMRP] and qualified by such program to receive a special license plate.*

§ 42–3–208(1)(b), C.R.S.2012 (2009 amendment in italics).

¶ 8 Thereafter, beginning in July 2009, the Department sold specialty plates to members of RMRP, who were not members of REF. REF filed this lawsuit alleging breach of contract and violation of the court's 2002 order resulting from the Department's sale of the plates to non-REF members. As an affirmative defense to REF's claims, the Department cited the 2009 amendment, alleging that the amendment permitted the Department to sell the specialty plates to members of RMRP and that REF's complaint was "improper because of a change in the law."

¶ 9 The parties filed cross-motions for summary judgment. In its response to the Department's summary judgment motion, REF argued that, pursuant to the test set forth in *In re Estate of DeWitt*, 54 P.3d 849 (Colo.2002), the 2009 amendment violated the Contracts Clauses of the United States and Colorado Constitutions, and therefore, the Department could not rely on the amendment as a defense to REF's claims. The Department disagreed, arguing that a Contracts Clause analysis pursuant to *DeWitt* was not applicable to this case because REF did not assert a constitutional claim in its complaint. Rather, the Department urged that the impossibility doctrine set forth in *United States v. Winstar Corp.*, 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996), should be applied to determine whether the Department's breach was excused based on the 2009 amendment.

¶ 10 The trial court agreed with the Department and concluded that the 2009 amendment made it impossible for the De- partment to comply with its obligations un- der the contract with REF, and therefore, the Department's breach was excused pursu- ant to the impossibility doctrine set forth in *Winstar*. Specifically, the court ruled as fol- lows:

In this case, unlike *Winstar* where changes in the regulatory structure were both foreseeable and likely, at the time the parties entered into the Contract in Janu- ary of 2000, legislation governing specialty license plates did not exist. Moreover, both parties agree that the subsequent legislation was not foreseeable. Accord- ingly, not only has [the Department] met its burden under the impossibility test, [but also] no issue of material facts exist.

¶ 11 The trial court also determined that the test set forth in *DeWitt* was inapplicable to this case because the constitutionality of the 2009 amendment was "not at issue": "[REF] does argue that the ... 2009 amend- ments violate the contract provisions of both the Colorado and United States Constitutions in the Response [to the Department's motion for summary judgment]. However[,] the is- sue, because of its absence from the Com- plaint, is not properly before the Court."

¶ 12 With respect to REF's claim that the Department's conduct violated the court's 2002 order, the trial court acknowledged that the 2002 order required the Department to sell specialty plates "to REF members only" and to "commence checking qualifiers for those seeking specialty plates applied for by REF." The court concluded, however, that the "rule of prospective relief remains and the [2002 order] must give way to the law as amended in 2009."

¶ 13 The trial court entered summary judgment in favor of the Department on REF's claims. REF filed a motion for a new trial pursuant to C.R.C.P. 59(d)(6), and the trial court denied the motion without com- ment.

## II. Standard of Review

¶ 14 We review de novo an order granting a motion for summary judgment. *Vail/Ar- rowhead, Inc. v. Dist. Court*, 954 P.2d 608, 611 (Colo.1998). Summary judgment is

proper only when the pleadings and supporting documents show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Jenkins v. Panama Canal Ry. Co.*, 208 P.3d 238, 240 (Colo.2009).

### III. Constitutionality of the 2009 Amendment

¶ 15 REF argues that the 2009 amendment violates the Contracts Clauses of the United States and Colorado Constitutions. We agree.

#### A. Preservation of Constitutional Challenge

■ ¶ 16 Initially, we reject the Department's argument that we should not consider REF's constitutional argument because this claim was not stated in the complaint. The Department does not cite any authority, and we have found none, to support this assertion. Nor did the trial court cite any authority to support its decision not to address the constitutional issue because it was not raised in REF's complaint.

¶ 17 A response to an affirmative defense is not required under C.R.C.P. 8. We do not consider REF's argument as a new claim for relief but as a specific argument in response to the Department's affirmative defense to REF's claims based on the 2009 amendment. *Cf. Glennon Heights, Inc. v. Cent. Bank & Trust*, 658 P.2d 872, 875 (Colo.1983); *see also* C.R.C.P. 56(h) ("At any time after the last required pleading, with or without supporting affidavits, a party may move for determination of a question of law. If there is no genuine issue of any material fact necessary for the determination of the question of law, the court may enter an order deciding the question.").

¶ 18 The case law is clear that challenges to the constitutionality of a statute which are not properly preserved for review in the trial court should not be considered for the first time on appeal. *City & County of Denver v. Desert Truck Sales, Inc.*, 837 P.2d 759, 765–66 (Colo.1992); *Manka v. Martin*, 200 Colo. 260, 264, 614 P.2d 875, 877 (1980); *Hessling v. City of Broomfield*, 193 Colo. 124, 128, 563 P.2d 12, 14 (1977). Here, however, it is undisputed that the constitutionality of the 2009 amendment was raised and adequately briefed in the trial court, in the parties' respective summary judgment motions. Therefore, this is not a case where the constitutional claim was raised for the first time on appeal. *See Kinsey v. Preeson*, 746 P.2d 542, 545 (Colo.1987) (addressing the defendant's constitutional challenge to a statute first raised in a motion for a new trial, and further noting that "where the issue is of constitutional proportions, [courts] have addressed it even if not properly raised in a motion for new trial").

¶ 19 Furthermore, REF adequately briefed the issue in its opening brief on appeal, and the Department had an opportunity to respond. And it cannot be said that the Attorney General did not have notice of REF's constitutional challenge, as the Department—an agency of the State—is already a party to this action. *See* § 13–51–115, C.R.S.2012.

¶ 20 Finally, because the constitutionality of a statute is a legal question, and because considerations of judicial efficiency and economy militate in favor of our disposing of it, rather than remanding it to the trial court, we will address REF's constitutional claim. *See Ross v. Denver Dep't. of Health & Hosps.*, 883 P.2d 516, 521 (Colo.App.1994).

#### B. Contracts Clause Violation

■ ¶ 21 We now turn to the merits of REF's argument that the 2009 amendment violates the Contracts Clauses of the United States and Colorado Constitutions. The application of a constitutional standard is a question of law which we review de novo. *DeWitt*, 54 P.3d at 858.

■■ ¶ 22 The prohibition against impairment of contract is found in both the Colorado and United States Constitutions. The Colorado Constitution provides, in pertinent part, that "[n]o … law impairing the obligation of contracts … shall be passed by the general assembly." Colo. Const. art. II, § 11. The United States Constitution states, in pertinent part, that "[n]o state shall … pass any … law impairing the obligation of contracts." U.S. Const. art. I, § 10, cl. 1.

These clauses, while designed to protect vested contract rights from legislative invasion, are not to be interpreted as absolute. *DeWitt*, 54 P.3d at 858; *Ohio & Colo. Smelting & Refining Co. v. Pub. Utils. Comm'n.*, 68 Colo. 137, 142–43, 187 P. 1082, 1084–85 (1920); *Union Pac. Ry. Co. v. De Busk*, 12 Colo. 294, 305–06, 20 P. 752, 757 (1889). Instead, the Clauses must be read to permit legislative action that promotes "the common weal, or ... general good of the public, though contracts previously entered into between individuals may thereby be affected." *DeWitt*, 54 P.3d at 858 (quoting *Ohio & Colo. Smelting*, 68 Colo. at 142, 187 P. at 1084). Accordingly, a finding that a law impairs a contract does not end the inquiry. *Id.* Notwithstanding such a finding, a court should uphold a challenged statute if it is reasonable and appropriately serves a significant and legitimate public purpose when considered against the severity of the contractual impairment. *Id.*

¶ 23 The United States Supreme Court has held that, in assessing an alleged Contracts Clause violation, the inquiry is "whether the change in state law has 'operated as a substantial impairment of a contractual relationship.'" *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978)); *accord DeWitt*, 54 P.3d at 858. The answer to this inquiry involves consideration of three factors. *DeWitt*, 54 P.3d at 858. First, the court must ascertain whether there is a contractual relationship; to establish this component, a party must demonstrate that the contract gave him a vested right. *Id.; see also Dodge v. Bd. of Educ.*, 302 U.S. 74, 77–78, 58 S.Ct. 98, 82 L.Ed. 57 (1937); *Police Pension & Relief Bd. v. McPhail*, 139 Colo. 330, 336, 338 P.2d 694, 697 (1959). Second, a court must determine whether a change in the law impairs that contractual relationship. *DeWitt*, 54 P.3d at 858; *see also Gen. Motors Corp.*, 503 U.S. at 186, 112 S.Ct. 1105. Third, a court must decide whether the impairment is substantial. *DeWitt*, 54 P.3d at 858; *see also Gen. Motors Corp.*, 503 U.S. at 186, 112 S.Ct. 1105. The second two components are often considered together: to

prove substantial impairment of a contractual relationship, a party must demonstrate that the law was not foreseeable and thus disrupts the parties' expectations. *DeWitt*, 54 P.3d at 858; *see also Allied Structural Steel*, 438 U.S. at 245, 98 S.Ct. 2716.

¶ 24 Because the Contracts Clause is not an absolute bar to legislative regulation of contracts, the Supreme Court has explained that a sliding scale of sorts is appropriate when assessing whether the impairment of contract violates the Contracts Clause: "The severity of the impairment measures the height of the hurdle the state legislation must clear. Minimal alteration of contractual obligations may end the inquiry at its first stage." *Allied Structural Steel*, 438 U.S. at 245, 98 S.Ct. 2716; *see also DeWitt*, 54 P.3d at 858.

¶ 25 Additionally, courts should consider whether the statute in question touches on an area that has historically been regulated by the legislature; if so, the statute is less likely to be found to violate the Contracts Clause. *Allied Structural Steel*, 438 U.S. at 249, 98 S.Ct. 2716; *DeWitt*, 54 P.3d at 858.

¶ 26 The fact that the contractual obligations of the government, rather than a private party, are at issue in this case is significant. The Supreme Court has noted that under the federal Contracts Clause "impairments of a State's own contracts would face more stringent examination ... than would laws regulating contractual relationships between private parties." *Allied Structural Steel*, 438 U.S. at 244 n. 15, 98 S.Ct. 2716, *quoted in City of Golden v. Parker*, 138 P.3d 285, 293 n. 3 (Colo.2006).

¶ 27 Here, it is undisputed that REF and the Department entered into a contract whereby the Department would sell specialty license plates only to members of REF, *see REF I*; that the 2009 amendment impaired the parties' contract, because it permitted the Department to sell specialty plates to nonmembers of REF, in direct violation of the contract terms; and that the 2002 legislation governing specialty license plates was not foreseeable or likely when the parties entered into the contract, but rather invaded

an area never before subject to regulation by the State. Because the legislation was not foreseeable when the parties entered into the contract, the parties' expectations were disrupted by the 2009 amendment, and therefore the parties' contract was "substantially impaired." [2]

¶ 28 Furthermore, the 2009 amendment simply does not possess the attributes of those state laws that in the past have survived challenges under the Contracts Clause. The original legislation and the amendment were not purportedly enacted to deal with a broad, generalized economic or social problem. The 2009 amendment did not create simply a temporary alteration of the contractual relationship between REF and the Department, but rather it worked a permanent and immediate change in that relationship. And its narrow aim was leveled only at the contract between REF and the Department. *See Allied Structural Steel,* 438 U.S. at 250, 98 S.Ct. 2716.

¶ 29 Accordingly, the undisputed facts support the conclusion that, under the test set forth in *DeWitt,* the 2009 amendment violates the Contracts Clauses of the United States and Colorado Constitutions.

## IV. Breach of Contract

¶ 30 In light of our conclusion that the 2009 amendment is unconstitutional, the trial court's judgment in favor of the Department on REF's breach of contract claim must be reversed. It is undisputed that the Department breached the contract with REF, and the Department can no longer rely on the 2009 amendment to excuse its breach. The case must be remanded to the trial court for

a hearing to assess damages on REF's breach of contract claim.

## V. Violation of Permanent Injunction

¶ 31 We also conclude that the trial court's judgment in favor of the Department on REF's claim for violation of the court's 2002 order must be reversed. Although the trial court acknowledged that the 2002 order required the Department to sell specialty plates only to REF members, *see REF I,* the court nevertheless concluded that the order "must give way to the law as amended in 2009," essentially vacating the 2002 order. Because we have determined that the 2009 amendment is unconstitutional, the trial court's determination that the amendment obviated the 2002 order cannot stand. Therefore, at the hearing on remand, the trial court also should consider what damages should be assessed for the Department's violation of the 2002 order.

¶ 32 In view of our reversal of the trial court's summary judgment in favor of the Department, we need not consider REF's appeal from the denial of its motion for a new trial.

¶ 33 The judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

Judge CASEBOLT and Judge BERNARD concur.

---

**2.** We note that the original legislation adhered to the parties' expectations under the contract and, as such, did not constitute a Contracts Clause violation.