2014 COA 119

Kaleb YOUNG, Plaintiff-Appellant,

v.

LARIMER COUNTY SHERIFF'S OF-FICE, a local government entity; Justin Smith, in his official and individual capacity as Larimer County Sheriff; and Detective Pete Mesecher, in his official and individual capacity, Defendants-Appellees.

Court of Appeals No. 13CA1338

Colorado Court of Appeals, Div. III.

Announced September 11, 2014

Corry & Associates, Robert J. Corry, Jr., Matthew W. Buck, Denver, Colorado; Simpson Defense Firm, LLC, Travis B. Simpson, Louisville, Colorado, for Plaintiff-Appellant

Jeannine S. Haag, County Attorney, William G. Ressue, Deputy County Attorney, Fort Collins, Colorado, for Defendants-Appellees

Opinion by JUDGE WEBB

¶ 1 This case presents another novel question that arises from the conflict between Colorado law and federal law concerning marijuana—does 42 U.S.C. § 1983 (2012) provide a remedy for state action that violates a right created by the Medical Marijua-na Amendment, article XVIII, section 14 of the Colorado Constitution (MMA)? Because federal law criminalizes possession of marijuana, we conclude that such a claim is not cognizable under section 1983.[1] We reject the other claims of plaintiff, Kaleb Young. Therefore, we affirm the summary judgment entered in favor of defendants, Larimer County Sheriff's Office, and Pete Mesecher and Justin Smith, both individually and in their official capacities.

## I. Background

¶ 2 Young leased property where he grew marijuana plants and distributed marijuana for medical use under the MMA. After obtaining search warrants, sheriff's deputies entered Young's property and seized forty-two marijuana plants by cutting them off just above the roots. This action killed the plants.

¶ 3 Young was charged with cultivation of marijuana, possession with intent to manufacture or distribute marijuana, and possession of more than twelve ounces of marijuana. The plants that had been seized were used as evidence. Still, the jury acquitted him of all charges based on the affirmative defense of medical use of marijuana by a person suffering from a debilitating medical condition under section 14(4)(b) of the MMA.

¶ 4 Based on the verdict and section 14(2)(e) of the MMA, the court ordered all seized property, including the plants, returned to Young. After the dead plants were returned, Young brought this action for damages on the basis that the deputies had killed the plants.

## II. Standard of Review

¶ 5 An appellate court reviews a summary judgment de novo. *Shelter Mut. Ins. Co. v.*

---

1. This holding comports with the positions of other divisions that have resolved issues arising under the MMA based on federal law. *See, e.g., Coats v. Dish Network, L.L.C.,* 2013 COA 62, ¶ 23, 303 P.3d 147 (Because "medical marijuana use was, at the time of [the plaintiff's] termination, subject to and prohibited by federal law, we conclude that it was not 'lawful activity' for the purposes of section 24-34-402.5.") (*cert. granted* Jan. 27, 2014); *People v. Watkins,* 2012 COA 15, ¶ 39, 282 P.3d 500 (statutory requirement "that all probation sentences explicitly include a condition that probationers not commit offenses during the probation period, includes federal offenses, and is not limited by [the medical marijuana provisions of] Colorado Constitution, article XVIII, section 14"); *Beinor v. Indus. Claim Appeals Office,* 262 P.3d 970, 973–75 (Colo.App. 2011) ("Marijuana, in contrast, remains a Schedule I controlled substance under the applicable federal statute and consequently cannot be prescribed.").

*Mid–Century Ins. Co.*, 246 P.3d 651, 657 (Colo.2011). A summary judgment will be upheld only where the record does not show any genuine issue of material fact. *Natural Energy Res. Co. v. Upper Gunnison River Water Conservancy Dist.*, 142 P.3d 1265, 1276 (Colo.2006). On review, the appellate court—like the trial court—must take all facts in the light most favorable to the non-moving party. *Id.*

### III. The Trial Court Properly Entered Summary Judgment on Young's 42 U.S.C. § 1983 Claim

#### A. Preservation

¶ 6 Young's complaint alleged that "defendants acted under color of state law to deprive [him] of certain constitutionally protected rights under the Fifth and Fourteenth Amendments to the Constitution of the United States," in violation of 42 U.S.C. § 1983. The rights specified were:

- "The right not to be deprived of property without due process of law;"
- "The right not to be deprived of liberty without due process of law;" and
- "The right to just compensation for taking of property."

¶ 7 According to the complaint, the property claim involved property "possessed, owned, and used in connection with the medical use of marijuana." Young's summary judgment response described the liberty claim as freedom "from bodily harm stemming from the symptoms of his debilitating medical condition" that he would have treated with marijuana from the plants that had been destroyed. These rights rested solely on Young's status as both a patient and a primary caregiver under the MMA.

#### B. Law

¶ 8 42 U.S.C. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

¶ 9 To prove a section 1983 claim, a plaintiff must "establish that the defendant deprived him of a federal right and that the defendant acted under color of state law." *Marks v. Gessler*, 2013 COA 115, ¶ 95, 350 P.3d 883 (*cert. granted*, June 23, 2014). But section 1983 "does not create substantive rights; it provides a procedure to seek relief for violation of certain federal constitutional and statutory provisions." *Claassen v. City & County of Denver*, 30 P.3d 710, 715 (Colo. App.2000); *see also Monez v. Reinertson*, 140 P.3d 242, 244 (Colo.App.2006) ("To seek redress through § 1983, a plaintiff must assert the violation of a federal right, not merely a violation of federal law." (internal quotation marks omitted)). Thus, "[b]ecause the rights enforceable under [section] 1983 are only those recognized either by the federal constitution or by a federal statute, [section] 1983 cannot be used to enforce purely state rights...." *Perry v. Bd. of Cnty. Comm'rs*, 949 P.2d 99, 101 (Colo.App.1997).[2]

#### C. Application

¶ 10 For purposes of opposing the summary judgment motion, Young showed that the deputies' had killed his marijuana plants and, as a result, he could no longer use his own marijuana to treat his debilitating medical condition. As relevant here, the MMA permits "the medical use of marijuana" and provides no less than a defense to prosecution under state law for possession of up to two ounces of medical marijuana and cultivation of up to six medical marijuana plants for a patient and for each of a caregiver's patients, unless "greater amounts were medically necessary to address the patient's debil-

---

**2.** *See also Sweaney v. Ada County, Idaho,* 119 F.3d 1385, 1391 (9th Cir.1997) ("To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress.") (internal quotation marks omitted); 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3573.2 (3d ed.2008) ("Obviously, § 1983 does not allow vindication of purely state-created rights. The rights asserted must be secured by federal law.").

itating medical condition." Colo. Const. art. XVIII, § 14(4)(b).[3] Section 14(2)(e) requires that medical marijuana which has been seized be returned upon circumstances including, as here, acquittal of criminal charges based on the protection afforded a patient or primary caregiver. Thus, the rights that Young alleges were violated arose under state law.

¶ 11 But contrary to the MMA, Congress has classified marijuana as a schedule I controlled substance. *See* 21 U.S.C. § 812(c) Schedule I(c)(10) (2012). By doing so, "the manufacture, distribution, or possession of marijuana became a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration preapproved research study." *Gonzales v. Raich,* 545 U.S. 1, 14, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) (state law authorizing possession and cultivation of marijuana does not circumscribe federal law prohibiting use and possession); *see also Raich v. Gonzales,* 500 F.3d 850, 866 (9th Cir.2007) (rejecting due process liberty interest claim based on physician's advice to use medical marijuana because "federal law does not recognize a fundamental right to use medical marijuana prescribed by a licensed physician to alleviate excruciating pain and human suffering"); *accord Beinor v. Indus. Claim Appeals Office,* 262 P.3d 970, 977 (Colo.App.2011) ("Although Colorado's medical marijuana provision may protect claimant from prosecution under Colorado's criminal laws ... the amendment has no bearing on federal laws, under which marijuana remains an illegal substance."). Thus, the federal prohibition implicates both Young's property interest (possession) and liberty interest (use) claims.[4]

¶ 12 *Barrios v. County of Tulare,* No. 1:13–CV–1665, 2014 WL 2174746 (E.D.Cal.

2014), applied this prohibition in dismissing a section 1983 claim based on facts similar to those presented here. The County had seized and destroyed marijuana that was being cultivated by a medical marijuana patient. The complaint alleged, in part, a section 1983 claim for "violation of the Fourteenth Amendment due process clause based on the destruction of marijuana without an opportunity to be heard." *Id.* at *4.

¶ 13 The federal district court granted the County's motion to dismiss this claim. The court acknowledged that "[p]roperty interests derive not from the Constitution but from existing rules or understandings that stem from an independent source such as state law...." *Id.* But then it explained:

- "[F]ederal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Id.* (internal quotation marks omitted).

- "[E]ven though state law creates a property interest, not all state-created rights rise to the level of a constitutionally protected interest." *Id.* (internal quotation marks omitted).

- "The Complaint identifies marijuana as the property destroyed by the County." *Id.*

- "[N]o person can have a legally protected interest in contraband per se." *Id.* at *5.

- "An object is contraband per se if its possession, without more, constitutes a crime...." *Id.* at *4 (internal quotation marks omitted).

- "Under the federal Controlled Substances Act ("CSA"), it is illegal for any private person to possess marijuana. 21 U.S.C. §§ 812(c), 841(a)(1), 844(a).

---

3. Because our conclusion is based on lack of a corresponding federal right, we need not address whether the MMA "merely created an immunity from criminal prosecution, and not a separate constitutional right." *Beinor,* 262 P.3d at 978 (Gabriel, J., dissenting); *see Brown v. Ely,* 14 P.3d 257, 258 (Alaska 2000) (Declining to recognize a section 1983 claim based on Alaska's constitutional right to privacy because "the search violated no federal right and ... the state right ... would directly conflict with federal law.").

4. Whether Young's liberty interest claim for use of medical marijuana is separately cognizable from his property interest claim for possession of marijuana and marijuana plants is questionable. *See Campbell v. People,* 73 P.3d 11, 14 (Colo. 2003) ("Although possession can occur without use, use is preceded by possession."). And in any event, destruction of Young's marijuana plants did not prevent him from purchasing medical marijuana to treat his condition.

Thus, under federal law, marijuana is contraband per se, which means no person can have a cognizable legal interest in it." *Id.*

Therefore, the court concluded, "plaintiff cannot recover damages as a result of the confiscation or destruction of marijuana because he had no cognizable property interest in the marijuana." *Id.* at *5.

¶ 14 Because *Barrios* is an unavoidable consequence of the federal criminalization of marijuana, we follow it here. Thus, notwithstanding the MMA, Young cannot seek relief under section 1983 for destruction of marijuana plants because that destruction did not impair a federal right. Therefore, the trial court properly entered summary judgment on Young's section 1983 claims.[5]

### IV. The Trial Court Properly Granted Summary Judgment on Young's State Law Takings Claim

#### A. Preservation

¶ 15 Defendants argue that because Young's complaint alleged a taking only under federal law (which is foreclosed by the federal criminalization of marijuana), a state law takings claim under article II, section 15 of the Colorado Constitution should not be considered. But in Young's opposition to the summary judgment motion, he argued that under article II, section 15, his marijuana plants "were taken or damaged ... without just compensation." The trial court rejected this claim on the merits, holding that Young had not showed "a taking for private purposes." Then the court entered summary judgment because the marijuana plants had been seized as evidence in a criminal proceeding, which did not constitute a public use.

██ ¶ 16 Because this issue was fully litigated, it is properly before us. *See Raptor Educ. Found., Inc. v. State, Dep't of Revenue*, 2012 COA 219, ¶¶ 16–18, 296 P.3d 352

(addressing issue not pleaded in complaint where it "was raised and adequately briefed in the trial court, in the parties' respective summary judgment motions").

#### B. Law

██ ¶ 17 Under article II, section 15, "property shall not be taken or damaged, for public or private use, without just compensation." This section "provide[s] a remedy in damages for injury to property, not common to the public, inflicted by the state or one of its political subdivisions." *Srb v. Bd. of Cnty. Comm'rs*, 43 Colo.App. 14, 18, 601 P.2d 1082, 1085 (1979). It "is not limited in application to condemnation proceedings," but "is remedial in nature and must be liberally construed." *Id.*

██ ¶ 18 Even so, a valid seizure under criminal law does not constitute a taking for which the owner is entitled to just compensation. *City & County of Denver v. Desert Truck Sales, Inc.*, 837 P.2d 759, 766 (Colo. 1992) ("[T]he seizure of the vehicle was not a taking of private property for public purposes.... The vehicle was seized and impounded by a police officer pursuant to ... a lawful exercise of Denver's police power."). The supreme court explained:

> Police power should not be confused with eminent domain, in that the former controls the use of property by the owner for the public good, authorizing its regulation and destruction without compensation, whereas the latter takes property for public use and compensation is given for property taken, damaged or destroyed.

*Id.* at 766–67 (quoting *Lamm v. Volpe*, 449 F.2d 1202, 1203 (10th Cir.1971)).[6] This rule applies whether "the property is seized as evidence in a criminal investigation or as the suspected instrumentality of a crime." *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1331 (Fed.Cir.2006).

*Kam–Almaz v. United States*, 682 F.3d 1364, 1371 (Fed.Cir.2012) (explaining that property seized and retained pursuant to the police power is not taken for a "public use"); *Steward v. United States*, 80 Fed.Cl. 540, 543 (Fed.Cl.2008) ("[T]he loss, depreciation or damage of items confiscated in the context of a criminal investigation cannot be the basis of a takings claim in this court.").

---

5. Given this conclusion, we need not address defendants' statute of limitations argument.

6. *See AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153–55 (Fed.Cir.2008) ("[T]he government seized the pharmaceuticals in order to enforce criminal laws, a government action clearly within the bounds of the police power," which does not constitute a public use.); *see also*

## C. Analysis

¶ 19 Young argues that the seizure of his marijuana plants constituted a taking for a public purpose because the plants were used as evidence in a public trial, to prove that he violated Colorado's Uniform Controlled Substances Act, §§ 18–18–101 to –606, C.R.S.2013. The General Assembly has noted that substance abuse implicates public safety and health. § 18–18.5–101(1) and (2), C.R.S.2013. But Young cites no authority supporting his taking for a public purpose argument, nor have we found any in Colorado.

¶ 20 In the absence of any such authority, we follow those cases holding that because "it is clear that the police power encompasses the government's ability to seize and retain property to be used as evidence in a criminal prosecution," a taking for public use does not occur. *AmeriSource Corp. v. United States,* 525 F.3d 1149, 1153 (Fed.Cir.2008); *see Eggleston v. Pierce County,* 148 Wash.2d 760, 64 P.3d 618, 624 (2003) ("[W]e are aware of no case that holds or even supports the proposition that the seizure or preservation of evidence can be a taking.").

¶ 21 Young's acquittal of the charges does not require a different conclusion. Although no Colorado court has addressed this scenario, Young fails to cite supporting out-of-state authority. And persuasive authority holds that the outcome of a criminal proceeding does not determine the takings analysis. *AmeriSource Corp.,* 525 F.3d at 1154 (noting that the "inquiry remains focused on the character of the government action, not the culpability or innocence of the property holder" and that "[t]he innocence of the property owner does not factor into the determination"); *see Bennis v. Michigan,* 516 U.S. 442, 452–53, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996).[7]

¶ 22 For these reasons, the trial court properly entered summary judgment on the state law takings claim.

7. *See also United States v. One 1979 Cadillac Coupe De Ville,* 833 F.2d 994, 1000 (Fed.Cir. 1987) (noting that an acquittal "did not make the government seizure and possession [of property related to the crime with which the defendant was charged but ultimately acquitted] any less proper, or convert that seizure into a taking");

## V. The Trial Court Properly Entered Summary Judgment on Young's Damages Claim Under the MMA

### A. Preservation

¶ 23 Young's complaint alleged that his property interest in medical marijuana was "harmed, injured, and destroyed by defendant's actions." And "[a]s a result of this harm ... [he] was directly economically damaged...." The trial court entered summary judgment on this claim because "no express or implied private right of action exists under the [MMA]."

### B. Law

¶ 24 Section 14(2)(e) of the MMA provides: Any property interest that is possessed, owned, or used in connection with the medical use of marijuana or acts incidental to such use, shall not be harmed, neglected, injured, or *destroyed* while in the possession of state or local law enforcement officials where such property has been seized in connection with the claimed medical use of marijuana. Any such property interest shall not be forfeited under any provision of state law providing for the forfeiture of property other than as a sentence imposed after conviction of a criminal offense or entry of a plea of guilty to such offense. Marijuana and paraphernalia seized by state or local law enforcement officials from a patient or primary care-giver in connection with the claimed medical use of marijuana shall be returned immediately upon the determination of the district attorney or his or her designee that the patient or primary caregiver is entitled to the protection contained in this section as may be evidenced, for example, by a decision not to prosecute, the dismissal of charges, or acquittal.

(Emphasis added.)

¶ 25 But unlike section 1983, "[n]o statutory equivalent exists under Colorado

*Seay v. United States,* 61 Fed.Cl. 32, 33–35 (2004) (holding that the subject of a criminal investigation did not state a takings claim even though a ruptured pipe at a government storage facility had rendered his property nearly worthless, and despite the fact that he was never indicted).

state law to enforce the state constitution." *Vanderhurst v. Colo. Mountain Coll. Dist.*, 16 F.Supp.2d 1297, 1304 (D.Colo.1998). Nor have Colorado appellate courts "recognized an implied cause of action to enforce the provisions of the Colorado Constitution." *Id.*

¶ 26 In *Board of County Commissioners of Douglas County v. Sundheim*, 926 P.2d 545, 547 (Colo.1996), the supreme court analyzed whether it had "the authority to recognize an implied damages action in cases where citizens allege that government entities have violated their state constitutional rights." The court noted that under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (recognizing an implied Fourth Amendment action for damages), two instances exist "where creation of an implied remedy would be unwarranted." *Sundheim*, 926 P.2d at 551. First, if "special factors counselling hesitation in the absence of affirmative action by Congress" were present. *Id.* (internal quotation marks omitted). And second, if there was an "explicit congressional declaration prohibiting money damages and remitting the plaintiff to an equally effective substitute remedy." *Id.* (internal quotation marks omitted). As to the first instance, the *Sundheim* court explained that after *Bivens,*

> [t]he emergence of "special factors counselling hesitation" foreclosing the *Bivens* remedy has grown increasingly important and indicates a judicial willingness to defer the creation of new damage remedies to Congress.

*Id.* at 552.

¶ 27 Citing *Sundheim,* the division in *Giuliani v. Jefferson County Board of County Commissioners,* 2012 COA 190, ¶ 35, 303 P.3d 131, held that even assuming the MMA created constitutional rights and at least one such right had been violated, no "right of action in damages in the language of article XVIII, section 14" could be implied.

## C.   Analysis

■ ¶ 28 Young concedes that section 14(2)(e) "does not expressly create a private

right of action." Even so, he argues that such an action should be implied because this section uses the word "destroyed" in the first sentence. Although the record includes evidence that defendants violated this sentence, his argument is contrary to *Giuliani.*

¶ 29 We agree with *Giuliani,* for the following three reasons.

¶ 30 First, the MMA includes some specific remedies for violations of other provisions. In section 14(3)(d), if the state health agency "fails to issue a registry identification card or fails to issue verbal or written notice of denial of such application, the patient's application for such card will be deemed to have been approved." Section 14(5)(b) provides that "the state health agency shall revoke for a period of one year the registry identification card of any patient found to have willfully violated the provisions of this section...."

¶ 31 Second, section 14(8) provides that "the General Assembly shall define such terms and enact such legislation as may be necessary for implementation of this section...." This language evinces an intent to leave further implementation of the MMA to the General Assembly. The General Assembly has enacted extensive implementing legislation,[8] but it has not provided a remedy for violation of section 14(2)(e). *See Dotson v. Griesa,* 398 F.3d 156, 167 (2d Cir.2005) ("[I]t is the overall comprehensiveness of the statutory scheme at issue, not the adequacy of the particular remedies afforded, that counsels judicial caution in implying *Bivens* actions.").

¶ 32 Third, the broad immunity created by the Colorado Governmental Immunity Act (CGIA), §§ 24–10–101 to –120, C.R.S.2013, offers a reason for the General Assembly's failure to provide such a remedy. *See Schweiker v. Chilicky,* 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (Where there are "indications that congressional inaction has not been inadvertent," courts should refrain from creating a new cause of action.).

■ ¶ 33 Under the CGIA, "the General Assembly has carefully defined the limits of a

---

8. *See, e.g.,* § 25–1.5–106, C.R.S.2013; §§ 12–43.3–101 to –1001, C.R.S.2013 (Colorado Medi-   cal Marijuana Code).

private citizen's right to redress for the actions of government entities and officials." *Sundheim*, 926 P.2d at 549. The CGIA shields such entities from tort liability unless subject to an exception. *See Foster v. Bd. of Governors of the Colo. State Univ. Sys.*, 2014 COA 18, ¶ 27, 342 P.3d 497.

¶ 34 Section 14(2)(e) applies to "state or local law enforcement officials." Thus, any liability for violating this section would necessarily involve the actions of government entities and officials protected by the CGIA. But no exception exists under the CGIA for tort claims, such as conversion, based on destruction of "property ... used in connection with the medical use of marijuana," as prohibited by section 14(2)(e). *See* § 24–10–106. Thus, the General Assembly's failure to create a statutory damages remedy for violation of section 14(2)(e) is consistent with the CGIA.

¶ 35 Therefore, the trial court properly granted summary judgment on this claim.

### VI. Conclusion

¶ 36 The summary judgment is affirmed.

JUDGE GABRIEL and JUDGE MILLER concur.