Opinion for the court filed by Circuit Judge LOURIE.
Dissenting opinion filed by Circuit Judge NEWMAN.
LOURIE, Circuit Judge.
Majd Kam-Almaz appeals from the final decision of the United States Court of Federal Claims dismissing his breach of contract and Fifth Amendment taking claims. We affirm.
Background
Kam-Almaz alleged the following facts in his pleadings before the Court of Federal Claims. See Compl., Jan. 5, 2009, ECF No. 1; Am. Compl., Jan. 25, 2010, ECF No. 23. Kam-Almaz is a United States citizen employed in the business of international disaster relief assistance. On April 7, 2006, Kam-Almaz returned home from an overseas business trip. At Dulles International Airport in Loudoun County, Virginia, Agent Craig Muldowan of the United States Immigration and Customs Enforcement (“ICE”) detained Kam-Al-maz, informing him that he was a “person of interest to ICE.” Compl. ¶ 8. Muldowan seized Kam-Almaz’s laptop and two flash drives for review by ICE. Before Muldow-an seized the equipment, however, Kam-Almaz informed him that it contained the only copies of his business files; in response, Muldowan permitted Kam-Almaz to copy and retain one computer file. Upon seizing the equipment, Muldowan provided to Kam-Almaz a signed Customs Form 6051D indicating that the equipment would be detained for up to thirty days. Muldowan also verbally assured Kam-Al-maz that the equipment would be held for no more than seven days.
While the laptop was detained, its hard drive failed, destroying much of Kam-Al-maz’s business software. On May 15, 2006, a representative from the U.S. Customs and Border Protection (“Customs”) sent Kam-Almaz a letter seeking to assure him that a prompt resolution of the issue would be addressed by Muldowan. On June 21, 2006, about ten weeks after its seizure, the laptop was returned to Kam-Almaz. On June 24, 2006, the Director of Investigations for ICE sent Kam-Almaz a letter representing that “ICE has made *1367 every attempt to minimize the inconvenience to [Kam-AImaz], ICE copied the files and provided them to Mr. Kam-AI-maz during the initial border stop.” Compl. ¶¶ 18-19.
On January 5, 2009, Kam-AImaz filed suit in the Court of Federal Claims, alleging breach of an implied-in-fact contract. On January 25, 2010, he amended his complaint and included a takings claim. Kam-AImaz alleged damages totaling $469,480.00 due to lost business contracts resulting from his inability to access his computer files as well as replacement hardware, software, and warranty costs. On June 30, 2010, the government moved to dismiss, arguing that the Court of Federal Claims lacked jurisdiction over Kam-Almaz’s complaint, and that the complaint failed to state a claim upon which relief could be granted.
In a decision dated January 7, 2011, the Court of Federal Claims granted the government’s motion to dismiss. Kam-Almaz v. United States, 96 Fed.Cl. 84, 86 (2011). On the breach of contract claim, the court dismissed under Rule 12(b)(6) of the United States Court of Federal Claims (“RCFC 12(b)(6)”) for failure to state a claim upon which relief can be granted. The court held that the complaint failed in several respects to allege facts sufficient to find a bailment contract. The court found that, because the complaint stated that his property was seized, Kam-AImaz did not “deliver[] personalty” to the government as a bailment requires. Id. at 88. The court further found that the complaint failed to allege that the government promised to return the computer in accordance with Kam-Almaz’s instructions or to guard or carefully handle the equipment. Again focusing on the fact that the complaint described the government’s act as a “seizure,” the court found that the complaint failed to allege facts demonstrating the required mutuality of intent between the parties. Finally, the court held that the complaint lacked the necessary allegations of Muldowan’s authority to enter into a bailment contract.
The Court of Federal Claims also dismissed Kam-Almaz’s takings claim under RCFC 12(b)(6). The court explained that property seized and retained pursuant to the government’s police power is not taken for a public use within the context of the Fifth Amendment’s Takings Clause. Noting that border agents do not have authority to seize property without having reasonable cause to suspect a violation of law, the court rejected Kam-Almaz’s theory that the laptop was seized, not according to the police power, but according to an administrative border search for security purposes. The court further explained that, if the seizure was unauthorized, then the Court of Federal Claims would lack jurisdiction, because due process and Fourth Amendment claims are reserved for district courts. Finally, the court held that even assuming the government’s actions were authorized and that an unreasonable delay in returning the property amounted to a taking, the court lacks jurisdiction over damage claims for due process violations.
Kam-AImaz appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).
Discussion
To avoid dismissal for failure to state a claim under RCFC 12(b)(6), “a complaint must allege facts ‘plausibly suggesting (not merely consistent with)’ a showing of entitlement to relief.” Acceptance Ins. Cos., Inc. v. United States, 583 F.3d 849, 853 (Fed.Cir.2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The facts as alleged “must be enough to raise a right to relief above the speculative *1368 level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).” Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted). At the same time, a court is “ ‘not bound to accept as true a legal conclusion couched as a factual allegation.’ ” Id. (quoting Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). We review de novo a decision to dismiss a complaint for failure to state a claim under RCFC 12(b)(6). Hearts Bluff Game Ranch, Inc. v. United States, 669 F.3d 1326, 1328 (Fed.Cir.2012). We also review de novo the grant or denial of a motion to dismiss for lack of jurisdiction. See Frazer v. United States, 288 F.3d 1347, 1351 (Fed.Cir.2002).
I
We first address Kam-Almaz’s claim for breach of an implied-in-fact bailment contract. “An implied-in-fact contract with the government requires proof of (1) mutuality of intent, (2) consideration, (3) an unambiguous offer and acceptance, and (4) actual authority on the part of the government’s representative to bind the government in contract.” Hanlin v. United States, 316 F.3d 1325, 1328 (Fed.Cir.2003) (internal quotation marks omitted). An implied-in-fact contract is founded upon a meeting of the minds and “ ‘is inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.’” Id. (quoting Balt. & Ohio R.R. v. United States, 261 U.S. 592, 597, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923)). “A bailment relationship is said to arise where an owner, while retaining title, delivers personalty to another for some particular purpose upon an express or implied contract. The relationship includes a return of the goods to the owner or a subsequent disposition in accordance with his instructions.” Lionberger v. United States, 371 F.2d 831, 840 (Ct.Cl.1967); see also 19 Williston on Contracts § 53:1 (4th ed. 2012) (defining a bailment as “a delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be.” (international quotation marks omitted)). Kam-Almaz, as the plaintiff, bears the burden of proving the existence of an implied-in-fact contract. See Hanlin v. United States, 316 F.3d 1325, 1330 (Fed.Cir.2003).
Kam-Almaz contends that the Court of Federal Claims erred by concluding that his complaint failed to allege facts sufficient to assert a plausible claim for breach of an implied bailment contract. Kam-Almaz asserts that his complaint plausibly alleges a bailment because Kam-Almaz “delivered personalty” by transferring possession of his laptop to ICE, and because his computer was expected to be held only for a short period of time and then returned in working condition. Kam-Almaz further contends that his complaint plausibly alleges a breach of an implied-in-fact contract because the facts alleged demonstrate (1) mutuality of intent to contract, (2) a negotiation demonstrating offer, acceptance, and consideration, and (3) actual authority of Muldowan to bind the United States in contract. Finally, he contends that Supreme Court and Federal Circuit cases recognize that a party in Kam-Almaz’s shoes may be able to establish a breach of an implied contract when property temporarily detained by the government is damaged.
The government, in response, contends that the Court of Federal Claims correctly dismissed Kam-Almaz’s complaint on the *1369 pleadings. According to the government, Kam-Almaz did not allege mutual intent to contract because the government lawfully seized the laptop pursuant to its police power. The government further asserts that Kam-Almaz failed to establish any other element of an implied-in-fact bailment contract, including an offer, acceptance, consideration, and actual authority to contract.
We agree with the government that the Court of Federal Claims correctly dismissed Kam-Almaz’s complaint for failure to allege facts plausibly suggesting a breach of an implied-in-fact bailment contract. Like the Court of Federal Claims, we find numerous deficiencies in Kam-Almaz’s complaint. The complaint does not plausibly allege the required elements of a bailment. Kam-Almaz did not voluntarily “deliver” his equipment to Muldowan. See Goudy & Stevens, Inc. v. Cable Marine, Inc., 924 F.2d 16, 18 (1st Cir.1991). Rather, as Kam-Almaz repeatedly alleged, it was involuntarily “seized.” See Compl. ¶¶ 4, 5, 8, 10-12, 14, 16; Am. Compl. ¶ 3. The complaint further fails to allege facts indicating the mutual intent required for an implied-in-fact contract. A seizure, essentially by definition, lacks mutual intent. Thus, as the government correctly points out, a seizure pursuant to the government’s authority to police the border generally will not give rise to an implied-in-fact bailment contract. See Llamera v. United States, 15 Cl.Ct. 593, 597 (1988); see also Alde, S.A. v. United States, 28 Fed.Cl. 26, 30 (1993) (collecting cases and observing that “[t]hese cases evince a uniform reluctance to find an implied bailment contract ... where plaintiffs property has been seized pursuant to the Government’s exercise of its police power”). Further, because Kam-Almaz did not voluntarily deliver his property to the government, his complaint fails to allege any valid consideration. See Llamera, 15 Cl.Ct. at 598. In summary, we agree with the Court of Federal Claims that “[t]he ‘purely unilateral act’ of seizing a person’s personal property does not evidence intent to enter into a bailment contract.” Kam-Almaz, 96 Fed.Cl. at 88 (quoting Alde, 28 Fed.Cl. at 31).
In support of his bailment claim, Kam-Almaz points to Muldowan’s statement that the laptop would be seized “for no more than seven days” and the document receipt stating that “shipments may be detained for up to thirty (30) days.” Compl. ¶ 12. Those estimates of when the seized property might be returned to Kam-Almaz, however, are insufficient to allege a bailment contract. See, e.g., Llamera, 15 Cl.Ct. at 597 (noting that even though the plaintiff received “a receipt” for his seized property, the facts “did not evidence any intent to enter into a bailment agreement”). Furthermore, as the relevant regulation indicates, the fact that Kam-Almaz received a receipt in no way diminishes the characterization of Muldowan’s actions as a unilateral seizure. See 19 C.F.R. § 162.21(a) (“A receipt for seized property shall be given at the time of seizure to the person from whom the property is seized.”). Kam-Almaz also alleges that correspondence between him and the government supports the plausibility of his claim for an implied-in-fact bailment contract. But those letters do not evidence the government’s intent to enter into an enforceable implied-in-fact contract with Kam-Almaz. See Hanlin, 316 F.3d at 1330 n. 3.
We therefore conclude that Kam-Almaz failed to plausibly allege a mutual intent to contract, as an implied-in-fact contract requires, and further failed to plausibly allege a voluntary delivery of property, as needed for a bailment contract. We need not address the other deficiencies in Kam- *1370 Almaz’s pleadings identified by the Court of Federal Claims in order to conclude that the court correctly dismissed Kam-Almaz’s claim for breach of an implied-in-fact bailment contract.
Finally, Kam-Almaz contends that the Court of Federal Claims “treated the issue of the bailment as if such a claim were legally not viable,” and in so doing disregarded the Supreme Court’s opinions of Kosak v. United States, 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984) and Hatzlachh Supply Co. v. United States, 444 U.S. 460, 100 S.Ct. 647, 62 L.Ed.2d 614 (1980) (per curiam), as well as our court’s decision in Acadia Technology, Inc. v. United States, 458 F.3d 1327 (Fed.Cir.2006). Br. Pl.-Appellant Kam-Almaz at 14. Those opinions, however, merely suggested that the possibility of alleging an implied-in-fact bailment contract is not foreclosed when Customs detains property. In Kosak, a case involving a claim under the Federal Tort Claims Act, the Court noted the prospect of other remedies, including the possibility of bringing suit against an individual Customs official who negligently damaged detained goods and the possibility of bringing suit “[i]f the owner of property detained by the Customs Service were able to establish the existence of an implied-in-fact contract of bailment between himself and the Service....” 465 U.S. at 860 & n. 22, 104 S.Ct. 1519. In Hatzlachh, which similarly involved the effect of a statutory exception to the Federal Tort Claims Act, the Court observed that “[t]he absence of Government tort liability has not been thought to bar contractual remedies on implied-in-fact contracts.... ” 444 U.S. at 465, 100 S.Ct. 647. And finally, in Acadia, a case involving a takings claim under the Fifth Amendment, we noted “that an owner [of property detained by Customs] might be able to bring a suit under the Tucker Act for money damages under a theory of breach of an implied-in-fact contract of bailment between the owner and Customs,” but “we expressed] no opinion as to whether the facts [alleged] might support such a claim.” 458 F.3d at 1334 n. 2. In the present case, it is unnecessary to opine whether under some hypothetical set of alleged facts an implied-in-fact bailment contract could conceivably arise from the detainment of property by Customs. We merely hold, on the specific facts alleged and for the reasons stated, that Kam-Almaz’s complaint fails to state a claim for an implied-in-fact bailment contract.
II
We next turn to Kam-Almaz’s claim for a compensable taking. The Fifth Amendment to the United States Constitution provides in part, “nor shall private property be taken for public use, without just compensation.” The purpose of the Takings Clause is “to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.” Armstrong v. United States, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960).
Kam-Almaz asserts that the Court of Federal Claims erred by dismissing his takings claim for failure to state a claim under RCFC 12(b)(6). According to Kam-Almaz, the government’s seizure of his laptop constituted a physical taking for public use, for which just compensation is due. Kam-Almaz further contends that his claim alleges a compensable taking because, unlike cases such as Bennis v. Michigan, 516 U.S. 442, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996), a crime was not committed using the seized property. In addition, Kam-Almaz argues that the reasoning of the Court of Federal Claims was flawed because it did not define the extent of the government’s “police power.”
*1371 The government, in response, contends that the Court of Federal Claims lacked jurisdiction over Kam-Almaz’s takings claim because Kam-Almaz asserted that the seizure of his laptop was unlawful and unjust. Assuming the court had jurisdiction, the government asserts that the court correctly dismissed Kam-Almaz’s claim. According to the government, the complaint failed to allege a constitutional taking because an authorized seizure of property pursuant to the government’s police power is not for public use, and thus cannot be a taking. In addition, the government argues that property detained or seized by ICE officials is necessarily taken pursuant to the government’s police power.
As an initial matter, we agree with Kam-Almaz that the Court of Federal Claims possessed jurisdiction over his takings claim. The assertion in Kam-Almaz’s complaint that he suffered “an unjust and unlawful taking of his property,” Compl. at ¶ 22, could be read in at least two ways. On the one hand, as the government contends, it could be an assertion that the government’s seizure was unauthorized, in which case the district court, not the Court of Federal Claims, would possess jurisdiction. See Acadia, 458 F.3d at 1331 (“[The] Tucker Act does not create jurisdiction in the Court of Federal Claims for a party contesting the propriety of a seizure.”). On the other hand, as Kam-Almaz asserts, the complaint may assert that the government’s seizure, although authorized, was compensable under the Fifth Amendment. Under the liberal standards applied to motions to dismiss, we conclude that the complaint does not dispute the propriety of the seizure itself, but rather seeks to challenge the failure of the government to compensate Kam-Almaz for a presumptively lawful seizure. Thus, the Court of Federal Claims properly exercised its jurisdiction over Kam-Almaz’s complaint.
Turning to the matter of the court’s dismissal, however, we agree with the government that Kam-Almaz failed to state a Fifth Amendment takings claim. Our precedent is clear: “Property seized and retained pursuant to the police power is not taken for a ‘public use’ in the context of the Takings Clause.” AmeriSource Corp. v. United States, 525 F.3d 1149, 1153 (Fed.Cir.2008); see also Acadia, 458 F.3d at 1331-32. Kam-Almaz appears to recognize as much, arguing that, “[t]o the extent the Court considers Acadia and Ameri-Source to be controlling, Kam-Almaz respectfully submits that those cases should be overruled en banc.” Br. Pl.-Appellant Kam-Almaz at 43. Of course, a panel of this court is powerless to overrule a precedent. See El-Shifa Pharm. Indus. Co. v. United States, 378 F.3d 1346, 1352 (Fed.Cir.2004).
In any event, Supreme Court precedent also supports the dismissal of Kam-Almaz’s complaint. In Bennis, the Court held that Mrs. Bennis, an innocent wife who had a property interest in a car that was forfeited after her husband used it in the commission of a crime, did not have a claim for a compensable taking. 516 U.S. at 452-53, 116 S.Ct. 994. Mrs. Bennis’s innocence did not factor into the Court’s takings analysis. Rather, the Court held that “[t] he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain.” Id. at 452, 116 S.Ct. 994. In AmeriSource, we summarized the Court’s holding in Bennis as follows: “[in] case[s] involving governmental seizure of property for law enforcement purposes, the [takings] inquiry remains focused on the character of the government action, not the culpability or innocence of the property holder.” 525 F.3d at 1154. Accordingly, *1372 Kam-Almaz’s innocence does not convert ICE’s seizure into a compensable taking under the Fifth Amendment.[1]
Kam-Almaz further asserts that the government’s seizure was not an exercise of its police power. We disagree. Customs officers unquestionably have the authority to search and seize property at our nation’s borders.[2] See, e.g., 19 C.F.R. §§ 162.6, 162.21. Under the relevant regulation, “[p]roperty may be seized ... by any Customs officer who has reasonable cause to believe that any law or regulation enforced by Customs and Border Protection or Immigration and Customs Enforcement has been violated....” Id. § 162.21. Lawful seizures performed pursuant to such authority necessarily fall within the government’s power to police the border. The “police powers ... are nothing more or less than the powers of government inherent in every sovereignty to the extent of its dominions.” The License Cases, 46 U.S. 504, 583, 5 How. 504, 12 L.Ed. 256 (1847) (opinion of Taney, C.J.). As we have noted, “[although the precise contours of the principle are difficult to discern, it is clear that the police power encompasses the government’s ability to seize and retain property to be used as evidence in a criminal prosecution.” AmeriSource, 525 F.3d at 1153.
We therefore hold that the Court of Federal Claims correctly dismissed Kam-Almaz’s takings claim under RCFC 12(b)(6). Whatever claim Kam-Almaz may have against the United States, if any, it is not under a breach of an implied-in-fact contract or a takings theory.
Conclusion
We have considered Kam-Almaz’s remaining arguments and find them unpersuasive. The judgment of the Court of Federal Claims dismissing Kam-Almaz’s complaint is affirmed.
AFFIRMED

. Kam-Almaz relies on Shelden v. United States, 7 F.3d 1022 (Fed.Cir.1993), in asserting that a takings claim may lie when property is seized by the government from an innocent owner pursuant to a criminal investigation. Shelden, however, was decided before Bennis. As we noted in AmeriSource, "[t]o the extent that [Shelden] purports to create any rules with respect to innocent owners in the takings context, it plainly lacks force.” 525 F.3d at 1156. Kam-Almaz’s reliance on Shelden is therefore not persuasive.

. The parties do not dispute that Agent Mul-dowan of ICE served as a Customs officer in performing the acts alleged in Kam-Almaz's complaint. See 19 C.F.R. §§ 162.6, 162.21; see also 19 U.S.C. § 1401(i). We therefore have no occasion in this case to distinguish between Customs and ICE concerning the authority of their officers to perform border searches and seizures.