NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CAROL ANN VASKO,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2014-5014

---

Appeal from the United States Court of Federal Claims in No. 1:12-cv-00370-MBH, Judge Marian Blank Horn.

---

Decided: September 15, 2014

---

CAROL ANN VASKO, of Marietta, Georgia, pro se.

L. MISHA PREHEIM, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief were STUART F. DELERY, Assistant Attorney General, ROBERT E. KIRSCHMAN, JR., Director, and KENNETH M. DINTZER, Assistant Director.

---

Before DYK, TARANTO, and CHEN, *Circuit Judges.*

PER CURIAM.

After the government evicted her from her home, Carol Ann Vasko brought suit in the Court of Federal Claims, alleging a breach of contract and an unconstitutional taking without just compensation. The Court of Federal Claims dismissed her suit for failure to state a claim upon which relief can be granted and for lack of jurisdiction. *Vasko v. United States*, 112 Fed. Cl. 204 (Fed. Cl. 2013). Ms. Vasko appeals the dismissal of her contract and taking claims. Because Ms. Vasko has not identified reversible error in the Court of Federal Claims' determination that she did not plead facts plausibly suggesting an entitlement to relief on either claim, we affirm.

## BACKGROUND

This dispute arises from the government's eviction of Ms. Vasko from the house on Nathan Lane where she was living. The property has a tangled ownership history. This much is clear: Helen and Howard McKinney purchased the property in 1992 through the Department of Veterans Affairs Home Loan Program, which guarantees a portion of certain home loans made to veterans or other eligible individuals. The McKinneys executed a Security Deed with their lender, dated December 14, 1992, to secure their payment of a $53,561 debt. Resp. App. 51–57. The Security Deed was recorded on December 22, 1992. A few months later, on February 10, 1993, the Security Deed was recorded again. The top of the newly recorded deed states the reason for the second recording: "This deed is being rerecorded to add the signature of the closing attorney to the closing attorney's affidavit." Resp. App. 58. On the same day, an assignment of the Security Deed was recorded: the original lender, "[f]or value received," transferred "all its right, title and interest" in the property to the Bank of Oklahoma. Resp. App. 64.

The McKinneys' debt was in arrears as of 2011, and as a result, the Bank of Oklahoma foreclosed on the

Nathan Lane property. On November 8, 2011, the Bank of Oklahoma transferred the property to the Secretary of Veterans Affairs under the terms of the VA's home-loan guaranty. On January 10, 2012, the Secretary initiated an eviction action against anyone living at the property. Ms. Vasko lived there at the time, having done so continuously, she claims, since 1996. During the eviction proceeding, the court handling the eviction issued an order requiring Ms. Vasko to pay her usual monthly rent into the court. The order told Ms. Vasko that her failure to make a payment would result in her eviction "without further hearing." Ms. Vasko made one payment to the court, but failed to timely make any other payments. On April 13, 2012, the court ordered Ms. Vasko to leave the property.

As to her interest in the property, Ms. Vasko initially claimed that she "purchased" the property from a William Brown in August 1996, though she admits that the transaction was never recorded with the relevant county records office. Mr. Brown, she claimed, had purchased the property from the McKinneys the day before he sold it to her. According to Ms. Vasko, her purchase agreement with Mr. Brown listed her "[s]ole responsibility with the Property" as paying him $600 each month. Br. of Appellant 4. Meanwhile, "[e]verything else, taxes, insurance, [were] taken care of" by Mr. Brown. *Id.* She now admits, however, that Mr. Brown did not then own the property, *see id.* at 2, and therefore could not have conveyed it to her. She now relies on the contention that she acquired ownership through adverse possession.

After the government evicted her, Ms. Vasko sued the United States in the Court of Federal Claims. She alleged that the government breached an oral contract that she had made with the attorney representing the government in the eviction proceeding. She claimed that the attorney, who worked at a private law firm, told her that she could stay at the property as long as she paid $600 each month.

Ms. Vasko also alleged a taking based on her eviction from the property. In the Court of Federal Claims, she filed an original complaint, an amended complaint that she later moved to withdraw, and a "First Supplemental Pleading" that she characterized as a "complaint [that] supplements the original complaint." *See* Resp. App. 31 (complaint); Resp. App. 34 (amended complaint); Mot. For Leave To File First Supplemental Pleading, *Vasko v. United States*, No. 12-370 (Fed. Cl. Jan. 17, 2013) (with First Supplemental Pleading attached as an exhibit; the court considered this pleading when dismissing her suit).

On August 19, 2014, the Court of Federal Claims granted the government's motion to dismiss for failure to state a claim. *Vasko*, 112 Fed. Cl. at 224. The court held that Ms. Vasko had "not alleged a breach of contract claim or a takings claim upon which relief can be granted," and therefore dismissed both claims under United States Court of Federal Claims Rule 12(b)(6). *Id.* (The court also held that it lacked jurisdiction over certain other claims that are not raised here. *Id.*) Regarding the contract claim, the court concluded, first, that Ms. Vasko did not allege facts suggesting that the private attorney representing the government in the eviction proceeding had any authority to bind the government to the alleged oral contract and, second, that she did not allege any of the other elements necessary for entering into a contract with the government, including mutuality of intent to contract, consideration, and an unambiguous offer and acceptance. *Id.* at 216–17. Regarding the taking claim, the court concluded that Ms. Vasko had (at least) constructive notice of the recorded Security Deed, which prevented her from acquiring an ownership interest in the property through adverse possession. *Id.* at 220–21.

Ms. Vasko filed a motion for reconsideration, which the Court of Federal Claims denied. Resp. App. 24. Ms. Vasko timely appealed here, raising only the contract

claim and taking claim.[1]  We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review de novo a decision to dismiss a complaint for failure to state a claim. *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012).  Like the Court of Federal Claims, we take as true all undisputed facts alleged in the complaint and draw all reasonable inferences based on those allegations.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  While we hold pro se complaints to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), to avoid dismissal for failure to state a claim, "a complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Acceptance Ins. Cos., Inc. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).  The facts alleged "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). At the same time, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.*  Applying those complaint-sufficiency standards, we affirm.

A

The Court of Federal Claims did not err in dismissing Ms. Vasko's contract claim.  "To form an agreement

---

[1]  In her brief in this court, Ms. Vasko asserts in passing that the government exacted money from her illegally.  *See* Br. of Appellant 19.  Because she never made such an allegation in the Court of Federal Claims, and has not developed this assertion in this court, this argument is waived.

binding upon the government, four basic requirements must be met: (1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States in contract." *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003). The Court of Federal Claims focused primarily on the fourth factor, as to which it concluded that "there is no indication in the record that [the private attorney who represented the government in the eviction proceeding] had authority to authorize plaintiff to remain on the property indefinitely." *Vasko*, 112 Fed. Cl. at 216–17. We see no error in that determination.

"[A]nyone entering into an arrangement with the Government" is responsible for "accurately ascertain[ing] that he who purports to act for the Government stays within the bounds of his authority." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947). Accordingly, "[w]here a party contracts with the government, apparent authority of the government's agent . . . is not sufficient; an agent must have actual authority to bind the government." *Winter v. Cath-dr/Balti Joint Venture*, 497 F.3d 1339, 1344 (Fed. Cir. 2007). "Such actual authority may be express or implied from the authority granted to that agent." *Id.* Here, Ms. Vasko has not alleged facts that plausibly suggest that the private attorney hired by the VA to effectuate the eviction had authority to enter into a contract that allowed Ms. Vasko to remain on the property indefinitely or, indeed, at all.

Given the legal requirements for government contracting, Ms. Vasko's allegations about the private attorney do not state a plausible basis for inferring authority on his part to bind the government to the contract she alleges. "Authority to bind the government may be implied when it is an integral part of the duties assigned to the particular government employee." *Id.* at 1346. The only allegation about the attorney's role is that the gov-

ernment retained him to represent it in seeking to evict from the property anyone who was living there. Authority to permit a tenant to remain on the property is not "an integral part of the duties" needed to evict a tenant. Accordingly, the Court of Federal Claims correctly determined that Ms. Vasko furnished no plausible basis for finding that the attorney had actual (express or implied) authority to bind the government here or, therefore, for granting relief on her contract claim.

B

The Court of Federal Claims also properly dismissed Ms. Vasko's taking claim. One prerequisite for that claim is that she have a protected "private property interest" in what she claims was taken. *Adams v. United States*, 391 F.3d 1212, 1218 (Fed. Cir. 2004). In the Court of Federal Claims, Ms. Vasko alleged that she acquired a property interest in the Nathan Lane property either through her agreement with Mr. Brown or through her adverse possession of the property. The court, considering both contentions, held that she "failed to establish that she had a legally cognizable property interest in the Nathan Lane property to which she claims entitlement." *Vasko*, 112 Fed. Cl. at 219. On appeal, she presents only the adverse-possession argument, *see* Br. of Appellant 2, which the Court of Federal Claims rejected on the ground that she had at least constructive notice—and seemed to admit that she even had actual notice—of the recorded Security Deed executed by the McKinneys and their original lender and of its subsequent recorded assignment to the Bank of Oklahoma. *Id.* at 220–21.

We see no error in the Court of Federal Claims' determination that, at the time of her eviction, Ms. Vasko had no property interest in the Nathan Lane property. A statute of Georgia, the site of the property, states the following about "prescription" (adverse possession):

Prescription shall not run against the owner or holder of a mortgage, a deed to secure debt, a bill of sale to secure debt, or any other instrument creating a lien on or conveying an interest in real or personal property as security for debt in favor of a person who has actual or constructive notice of such instrument.

Ga. Code Ann. § 44-5-176. Under this statute, there can be no adverse possession if Ms. Vasko had actual or constructive notice of the Security Deed here. We note, as a procedural matter, that Ms. Vasko has not challenged the propriety of considering the Security Deed and related papers in deciding the motion to dismiss in this case.

Ms. Vasko argues that the December 22, 1992 recording did not provide her with constructive notice of the Security Deed. She points to the fact that the "Closing Attorney's Affidavit"—which was attached to the Security Deed—does not have a signature on the signature line designated for the closing attorney. There is no dispute, however, that the recorded deed "was signed by [Mr.] McKinney, [Mrs.] McKinney, and an 'additional' witness, and had been notarized." *Vasko*, 112 Fed. Cl. at 220–21.

We agree that, under Georgia law, the December 22nd recording and its subsequent recorded assignment to the Bank of Oklahoma on February 10, 1993, along with the provision that day of the missing signature on the "Closing Attorney's Affidavit," provided Ms. Vasko with constructive notice—before her claimed 1996 occupancy—that the original lender and then the Bank of Oklahoma held "a lien on or . . . an interest in" the Nathan Lane property "as security for debt." Ga. Code Ann. § 44-5-176. We see no basis for concluding that the missing signature on the "Closing Attorney's Affidavit" defeats the constructive notice. It is a separate document from the Security Deed, and she has advanced no basis for finding either the 1993 addition of the signature to be defective or the

absence of the signature in 1992 to undermine the notice of the recording. Moreover, we see no reason why the 1992 recording of the Security Deed itself, which was not defective, failed to provide constructive notice: it was attested to by an official witness and an unofficial witness and then "duly filed, recorded, and indexed on the appropriate county land records." Ga. Code Ann. § 44-14-33; *see also Wells Fargo Bank, N.A. v. Gordon*, 292 Ga. 474, 475, 749 S.E.2d 368, 370 (2013) ("The recording of a properly attested security deed serves as constructive notice to all subsequent bona fide purchasers."). Similarly, we have been given no reason why the 1993 assignment of the deed to the Bank of Oklahoma, itself duly recorded, did not further provide constructive notice. In these circumstances, under Georgia law adverse possession could not run "in favor" of Ms. Vasko and "against" either the original lender or the Bank of Oklahoma, *see* Ga. Code Ann. § 44-5-176, and Ms. Vasko had no property interest, a prerequisite to her taking claim.

Finally, Ms. Vasko seeks the return of, or damages for, a stove that she bought and installed on the property. The recorded Security Deed, however, has a provision directly addressing such property that gives the lender the right, as "security for the indebtedness," to "collect and retain" "all fixtures now or hereafter attached to or used in connection with the premises." Resp. App. 51. The deed states that the term "fixture" includes "household appliances" and specifically lists "range/oven" as an example. *Id.* Thus, in addition to its right to repossess the Nathan Lane property, the government also had the right to repossess fixtures to that property.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Court of Federal Claims.

No Costs.

**AFFIRMED**